**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

United States Bankruptcy **Court**
Southern District of Texas
FILED

APR 2 6 2010

David J. Bradley, Clerk of **Court**

ERIC VASQUEZ,
      Petitioner,


vs.                            Docket No.: 4:06-CR-89-001


UNITED STATES OF AMERICA
      Respondent.
_____/

**PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX
IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE
SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255**

Comes now Eric Vasquez with this his Memorandum of Law and Supporting Appendix in support of Motion to Correct and/or Set Aside Conviction and/or Sentence pursuant to Title 28 U.S.C. § 2255 and in support provides as follows:

**SUMMARY OF THE PROCEDURAL HISTORY**

1.    On March 21, 2006 a Federal Grand Jury in the United States District Court for the Southern District of Texas, Houston Division returned a two (2) Count Indictment naming Petitioner Vasquez and seven other co-defendants. Count 1 alleged a Conspiracy to Possess with Intent to Distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine alleged to have occurred on or about February 20, 2006, and continuing up to February 21, 2006 in violation of 21 U.S.C. §846; 21 U.S.C. §841(a)(1); and §841(b)(1)(A)(ii). Count 2 alleged aiding and abetting possession with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine,

alleged to have occurred on or about February 21, 2006 in violation of 21 U.S.C. § 841 (a)(l) & 841 (b)(l)(A)(ii); and 18 U.S.C. § 2. (D.E. 22)

2. On November 15, 2006, Petitioner proceeded to jury trial. (D.E. 175)

3. On November 20, 2006, the jury entered a verdict of guilty on Counts 1 and 2 as to all three Defendants'. (D.E. 184)

4. On March 27, 2007 Petitioner was sentenced to 151 months incarceration.

5. Petitioner proceeded on appeal to the Fifth Circuit, however, on December 23, 2008 the Court affirmed Petitioner's sentence and conviction. See, *United States v. Vasquez*, 553 F.3d 903 (5th Cir. 2008)

6. Petitioner proceeded to the United States Supreme Court, who on April 27, 2009 denied the request for a Writ of Certiorari. *See, United States v. Vazquez,* No. 08-9466.

7. This timely petition follows.

## ALLEGATION OF JURISDICTION

This Court has jurisdiction to entertain, rule on the merits, and grant relief under Title 28 U.S.C. § 2255 and the principles of *Strickland v. Washington,* 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).

## STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE

Mr. Vasquez did not raise Claim Number One on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal.

"Cause" is therefore established for his failure to raise the claim prior to this motion. *Ciak v. United States*, 59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Mr. Vasquez to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Mr. Vasquez to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway*, 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall*, 17 F.3d 245, 246 [4] (8th Cir. 1994).

Mr. Vasquez has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d 1317,

3

1321 (6th Cir. 1993). "Prejudice" to Mr. Vasquez, within the meaning of *United States v. Frady*, 456 U.S. 152, (1982), as construed in case law such as *United States v. De La Fuente*, 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr. Vasquez sentence is in violation of the Constitution and laws of the United States. *Id.* *See also Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992) ("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Vasquez of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## STATEMENT OF THE FACTS

### A. Course of Proceedings and Disposition in the Court Below

Petitioner Vasquez was arrested along with several co-defendants' and charged with Conspiracy to Possess with Intent to Distribute Cocaine and Aiding and Abetting with Intent to Distribute a Controlled Substance. Petitioner was merely at the residence during the alleged conspiracy and played no active role in the furtherance of the conspiracy.

The Government in order to prove its case presented the testimony of two cooperating witnesses to be able to explain what occurred inside the residence while they were conducting surveillance outside. There was no surveillance conducted inside the residence. The testimony of the cooperating witnesses which had reached

plea agreements with the government in order to secure sentence reductions was the only testimony that linked Petitioner to the charged offense. Even with the testimony of the cooperating witnesses, the evidence only showed, at most, that Petitioner was merely at the scene after being invited to a party later in the evening and not an active participant in the charged conspiracy.

## ARGUMENT

## I. THE CONVICTION AND/OR SENTENCE OF MR. VASQUEZ IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### 1) The Performance Of Counsel For Mr. Vasquez Fell Below An Objective Standard Of Reasonableness During The Pre-Trial Phase and Sentencing  Portions of the Case

#### a. Standard Review – Ineffectiveness Prong

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance".

*Id*

The Court clarified that this reference to "highly deferential scrutiny"[1] referred only to the first or performance prong of the test and meant that,

"... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

"... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[2] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also: Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that,

"a single, serious error may support a claim of ineffective assistance of counsel."

---

[1] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

[2] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

*Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id*. 477 U.S. at 386.[3]

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy". *Id.,* 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.*  477 U.S. at 385.

---

[3] See also *Murray v. Carrier,* 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same),

The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland*. *See Kimmelman v. Morrison*, 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[4] if counsel's specific acts or omissions are not demonstrably[5] the result of actual strategic choices made between or among all

---

[4] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U.S. at 365, 387, 390-91.

[5] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989)(record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer")(*citing Kimmelman v. Morrison*, 477 U.S. at 386); *Moffet v. Kolb*, 930 F.2d 1156, 1160-61(7th Cir. 1991)(counsel's unexplained

plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[6] Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

> "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id. Strickland v. Washington,* 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing.[7] *A subsequent affidavit from counsel will not*

---

failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley,* 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was " rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen,* 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

[6] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra,* 878 F.2d at 711 (citing *Strickland,* 466 U.S. at 690-91); *Holsomback v. White,* 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996).

[7] *See United States v. Burrows,* 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs,* 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada,* 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax,* 20 F.3d 572, 573 (3rd

*suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [8]

In the instant case, Mr. Eric Vasquez has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

### b. Standard of Review – Prejudice Prong

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

---

Cir, 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[8] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case", [9] the Court specifically and explicitly rejected this argument by the government.

In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[10]

---

[9]This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano,* 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

[10] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell,*:

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice  inquiry under *Strickland.* The determinative question - whether there is 'reasonable   probability that, but for counsel's  unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady*, 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady*, 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Id. Strickland*, 466 U.S. at 697-98, 80 L.Ed.2d at 700.[11]

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[12] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability

---

[11] *See Kimmelman v. Morrison*, 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger*, 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States*, 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland*, 466 U.S. at 694-95; *United States v. Glover*, 121 S.Ct. 696 (2001); *Williams v Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[13]

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover*, 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[14]

---

[12]*Lockhart v. Fretwell*, 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[13] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor,* 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson,* (10th Cir. 2000)(citing *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon,* 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

[14] *See also United States v. Breckenridge*, 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743

Based on the foregoing facts and law, Mr. Eric Vasquez has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

## COUNSEL RENDERED IN EFFECTIVE ASSISTANCE WHEN HE FAILED TO INTERVIEW THE CO-DEFENDANTS IN THE CASE THAT WOULD HAVE ESTABLISHED THAT THEY WERE BEING COERCED INTO PROVIDING TESTIMONY FOR THE GOVERNMENT

Petitioner presents that counsel rendered ineffective assistance when he failed to request permission from the co-defendant's attorney's in order to interview the Government witnesses after Petitioner had advised him that the witness were being coerced into providing testimony for the Government.

During the preparation of the trial, it became evident to Petitioner that two of the government witnesses were going to testify under duress and they were willing

---

(5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States,* 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States,* 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham,* 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995)(same) and *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono,* 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

to divulge this fact to defense counsel.  At no stage during the preparation of the trial, did defense counsel take the opportunity to interview witness German Arias and Bonifacio Hernandez in order to ascertain the facts of the allegations that Petitioner was providing.

Petitioner has been able to secure (2) notarized sworn affidavits from the defendants. In one of the affidavits German Arias testified that he was forced into admitting a prior drug transaction that involved 15 kilograms of cocaine that never occurred.

The Supreme Court has noted that counsel has a duty to make a reasonable investigation into the case, or to make the determination that a particular investigation is unnecessary. *Strickland,* 466 U.S. at 691. However, the Supreme Court has also noted that in order to constitute a claim for ineffective assistance of counsel for failure to investigate, an "attorney's failure must be virtually complete." *Bell v. Cone,* 535 U.S. 685, 698 (2002). A successful habeas petition must make a "specific, detailed showing to the content of the evidence into which trial counsel should have investigated." *United States ex. rel. McCall v. O'Grady,* 908 F.2d 170, 174 (7th Cir. 1990). Stated another way, "a section 2255 petitioner alleging ineffective assistance of counsel due to counsel's failure to investigate has the burden of providing ... a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States,* 319 F.3d 943, 951 (7th Cir. 2003); *see also United States v. Hubbard,* 929 F.2d 307, 310-11 (7th Cir. 1991).

It is evident as per the documents presented in this case, that had Petitioner's counsel taken the opportunity to interview the government witness as they were willing to speak to counsel, that the outcome of the proceedings would have been different. There is a reasonable probability the jury would not have convicted had counsel been able to discredit the Government with the information obtained from the government witnesses.

Accordingly, Petitioner respectfully prays this Honorable Court will grant an evidentiary hearing on the issues presented herein.

## COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO PERSONALY ADVISE PETITIONER OF THE RAMIFICATIONS OF THE GUIDELINES AND HOW THE GUIDELINES WOULD BE USED TO CALCULATE HIS SENTENCE, THUS RENDERING HIS PLEA INVOLUNTARY

Petitioner provides that his trial counsel was ineffective for failing to advise him of the relevant portions of the Sentencing Guidelines as they apply to relevant conduct. At no stage during the critical portions of the pre-trial preparation, was Petitioner ever advised that any uncharged portion of the alleged drug quantities presented by Government witnesses could be used to calculate his sentence. There was no explanation of the acceptance of responsibility portion of the guidelines, nor was there any basic explanation of the guidelines and how they would be used to calculate his sentence should he proceed to trial versus pleading guilty.

In order to prevail on [an ineffective counsel argument], the defendant must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment" and that "counsel's errors" were prejudicial; that is, "so serious as to deprive the defendant of a fair trial, a trial

16

whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness. Petitioner has a right to competent counsel during the critical stages of the criminal process. *See Caruso v. Zelinsky*, 689 F.2d 435 (3rd Cir. 1982). Moreover, petitioner "has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (*citing Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Counsel's incompetent advice, violated the petitioner's Sixth Amendment right to counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

As an analogy, in *United States v. McCoy*, 215 F.3d 102 (D.C. Cir. 2000) counsel advised his client of an incorrect application of the Sentencing Guidelines. On appeal, McCoy argued that his plea was unconstitutional because it was based on ineffective assistance of counsel. The District of Colombia agreed; it found that McCoy's guilty plea had not been knowingly and voluntarily made. *Id.* Following this same analogy, Petitioner provides that his decision to proceed to trial was based on his attorney's gross misadvise of the application of the relevant conduct of the sentencing guidelines. (*See* Appendix - Sworn Affidavit)

The *McCoy* Court noted that "[W]hile not every error made in calculating an applying the guidelines would constitute deficient performance under *Strickland,* the Court emphasized that 'familiarity with the structure and basic content of the

Guidelines, had become a necessity for counsel who seek to give effective representation.'" *Id.* at 508   The Court further found that the prejudice prong of *Strickland* test was satisfied, in that the difference between the sentencing ranges was so significant that there was a reasonable probability that if *McCoy* had been given correct information he would not have entered a guilty plea. *Id.*[15] Counsel's failure to familiarize himself with the relevant portions of the Sentencing Guidelines  causes his actions to fall below a reasonable standard of performance because a "[c]riminal defense attorneys practicing in the federal courts are expected to keep abreast of issues that affect his client's case." *Id. United State v. Loughery*, 908 F.2d 1014 (D.C. Cir. 1990)

In Petitioner's cause, he must only show that there is a "reasonable probability" that the results of his decision to proceed to trial would have been different, *Id. Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and based on the difference in sentencing guideline ranges, there could be no doubt that a different outcome is evident.  Had counsel properly taken the time to advise Petitioner how the relevant conduct portions of the sentencing guidelines applied to his case Petitioner would have accepted a plea of guilty and would have ultimately

---

[15] Although Petitioner proceeded to trial based on his counsel's misinformation of the relevant conduct portions of the Sentencing Guidelines, the same analogy as that presented by the *McCoy* Court can be reached in Petitioner's case.  Had it not been for the misinformation received by his trial attorney, Petitioner would have accepted a plea of guilt.

resulted in reduced guideline range that even included a safety valve sentence reduction.[16]

Based on the record and the files before this Court, there is a reasonable probability that counsel's actions have reached a level of ineffectiveness as enumerated in *Strickland*. Furthermore, there could be no strategic reason why counsel can justify his failure to explain the implications of the guidelines relevant conduct section to Petitioner. *See United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir. 1988)(absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

Accordingly, Petitioner respectfully prays this Honorable Court determine that counsel's actions have reached the level of ineffectiveness and remand for an evidentiary hearing on the merits raised herein.

---

[16] Petitioner to err on the side of caution has included an argument that counsel was ineffective for his failure to advise of safety valve sentence reduction both pre and post trial.

**PETITIONER WAS PREJUDICED AS A RESULT OF COUNSEL'S FAILURE TO ADVISE HIM THAT THE PROVISIONS OF THE U.S.S.G.'s § 2D1.1(b)(6) AND § 5C1.2 WOULD ALLOW HIM TO HAVE HIS SENTENCE REDUCED BY 2 LEVELS AND WOULD ALSO ALLOW HIM TO AVOID THE MINIMUM MANDATORY SENTENCE AS REQUIRED BY THE STATUTE**

Petitioner presents that counsel rendered ineffective assistance when he failed to advise him of the availability of a safety valve sentence reduction prior to making the decision to proceed to trial and failed to consider and advise Petitioner of the safety valve sentence reduction after the jury verdict was returned.  Petitioner presents that it was not until he arrived at his jail, began to review his case, that he became aware of the possibility of pursuing a safety valve sentence reduction and overall mitigation of his case.  Once again as presented in the sworn affidavit, had there been an explanation of the safety valve sentence reduction at any stage, coupled with the mitigation of sentence for an acceptance of responsibility, there is a definite probability that Petitioner's overall sentence would have been reduced.

Congress enacted the safety valve provision, 18 U.S.C. § 3553(f), in order to mitigate the harsh effect of mandatory minimum sentences on certain first offenders who played supporting roles in drug-trafficking schemes. *See United States v. Miranda-Santiago*, 96 F.3d 517, 527 & n. 22 (1st Cir. 1996) (citing H.R.Rep. No. 103-460, 2d Sess., at 4 (1994)).  The Sentencing Commission then incorporated the statutory text verbatim into the Sentencing Guidelines. *See* U.S.S.G. § 5C1.2. When applicable, these provisions mandate both reduction of the defendant's

offense level and judicial disregard of statutes imposing mandatory minimum sentences.[17] The safety valve applies if;

> (1) the defendant does not have more than 1 criminal history point ...;

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

> (3) the offense did not result in death or serious bodily injury to any person;

> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense ... and was not engaged in a continuing criminal enterprise...; and

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...

*Id.* Title 18 U.S.C. § 3553(f); U.S.S.G.'s § 5C1.2

Notwithstanding the fact that Petitioner met all the requirements for the a sentence reduction per the safety valve provisions of § 5C1.2 and § 2D1.2(b)(6) and was willing to provide a complete and accurate proffer statement to the authorities prior to sentencing, counsel still failed to advise Petitioner that the option existed.[18] In fact, at any time after trial and at any time *prior* to the date of the sentencing

---

[17] Petitioner meets all five (5) requirements for the sentence reduction.

[18] Petitioner was never advised by his counsel that the provisions of the safety valve would have assisted him in mitigating his sentence. He was continually advised by his counsel to be careful with what he said at sentencing since it might affect the chances of arguing the sufficiency of the evidence on direct appeal. If Petitioner would have known the possibility of a sentence mitigation was possible as a result of the safety valve provisions although he proceeded to trial, he would have met with the authorities and provided a full disclosure of the all the facts of the case. (*See* Appendix - Sworn Affidavit of Petitioner)

hearing Petitioner could have met with the Government and provided a full disclosure. *See United States v. Brenes*, 250 F.3d 290 (5th Cir. 2001)(Safety valve statute, under which defendant may avoid mandatory minimum sentence and receive Sentencing Guidelines sentence if he cooperates with officials "not later than the *time of the sentencing hearing*" requires disclosure of information by the time of the commencement of sentencing hearing.)[19]

The requirements for the issuance of the 2 level reduction under § 2D1.1(b)(6) and § 5C1.2 are rather lax once the minimum statutory wording of § 5C1.2 has been met. Ironically enough, the Court's will grant the reduction in sentence even if the defendant lies at all stages during the proceedings and then "comes clean" and tells the truth "prior to the sentencing hearing." *See United States v. Marin,* 144 F.3d 1085 (7th Cir. 1998)(In order for a defendant who provides the government with untruthful pre-sentencing disclosures to satisfy the "not later than the time of the sentencing hearing" requirement and thus avail himself of the benefit of the "safety valve" provision ... the defendant must meet the safety valve's requirement of complete and truthful disclosure to the government by the time of the commencement of the sentencing hearing), nor does a defendant's lack of cooperation prior to the sentencing hearing prohibit the defendant from obtaining the benefit of the safety valve provisions or of § 2D1.1(b)(6)). *See also United States v. Tournier,* 171 F.3d 645 (8th Cir. 1999)

---

[19] The same requirements must be met as per § 2D1.2(b)(6).

Section 2D1.1(b)(6) instructs that for specified offenses, "[i]f the defendant meets the [safety valve] criteria set forth in ... §  5C1.2(a)[,] ... decrease [the base offense level] by 2 levels." "The plain language of the statute requires[s] the district court to make its own determination whether [a defendant] satisfied the safety valve provision. *Id. Jeffers* at 98   Furthermore, when all the required criteria is met, remand for resentencing is required to allow the Court to resentence a defendant under the provisions of § 2D1.1(b)(6) and if applicable without the mandatory minimum sentence as required under § 5C1.2.

However, the reason the statutory requirements were not met was not because Petitioner did not wish to provide the proffer prior to the sentencing hearing, but merely on the fact that *he was not made aware of the option by his counsel*. As presented in the sworn affidavit provided in support as Appendix-A, had Petitioner been aware of this option, or had counsel made Petitioner aware of the option, he would have provided the proffer statement and would have received the reduction. (*See* Appendix - A)

Accordingly, the Court must agree that Petitioner was willing and able to meet the requirements of § 5C1.2 and would have benefited from the sentence reduction had he been advised of the possibility from his counsel.

23

**COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO OBJECT TO THE IMPROPER JURY INSTRUCTIONS THAT ALLOWED THE JURY TO DRAW AND INFERENCE ON PETITIONER'S FIFTH AMENDMENT SILENCE DURING THE JURY INSTRUCTION**

Petitioner presents that during the review of the jury instructions prior to submitting the same to the deliberation, the Judge clearly established on the record during the review the correct pattern jury instructions that were to be presented for the jury's consideration.   Counsel was aware of the correct instructions to present during the closing arguments.

However, when the actual jury instructions were read before the jury, the Courts provided the erroneous following instruction:

> "Unless you are satisfied that the government has proven the defendant guilty, the defendant is guilty, the presumption alone is sufficient to find the defendant not guilty. The law does not require a defendant to prove his or her innocence or produce any evidence at all **and no inference whatever may be drawn from the election on the defendant to testify**." *Id.*

In essence, the jury was advised by the Judge during the explicit jury instructions, that they were not allowed to draw any inference whatsoever from the defendant's **election to testify**. T his is an obvious variation from the pattern jury instructions that were discussed earlier during the preparation of the trial where the Court reviewed with counsel, without objection, that no inference whatsoever may be drawn from the election of a defendant **not to testify**.

The correct jury instruction advises the jury that should the defendant elect to stand on his Fifth Amendment Constitutional right not to testify during the trial, that the jury is not allowed to draw any inference whatsoever on the defendant's exercise of his constitutional right to remain silent during the trial. This protection

24

as this Court is aware is presented during the jury instructions in order to dissolve the jury from considering in any fashion whatsoever the defendant's silence during the trial.

The burden is at all times on the government of proving Petitioner's guilt beyond a reasonable doubt. However, the error occurs when the Judge erroneously advises the jury that no inference should be drawn whatsoever when the defendant elects "to testify". In essence, the Court advised the jury that since it was not allowed to draw any inference whatsoever on the defendant's right to testify, that the jury was free to draw whatever inference it chose and desired based on the defendant's constitutional right of silence.  It is unknown, but it is assumed, that the jury followed the Judge's instructions as read to them during the closing arguments.

The mere fact that the jury was allowed as per the Court's instructions to draw whatever inferences it chose on the defendant's silence, violates defendant's constitutional rights to a fair trial.  It has already been established that the Court must instruct the jury against drawing adverse inferences from the defendant's failure to testify. See *Carter v. Kentucky,* 450 U.S. 288, 300, 101 S. Ct. 1112, 1119, 67 L.Ed.2d 241 (1981) (instruction required by Fifth Amendment; *Bruno v. United States*, 308 U.S. 287, 293, 60 S. Ct. 198, 200, 84 L.Ed. 257 (1939)(instruction required by 18 U.S.C. Section 3481). The failure or error in instructing the jury cannot be dismissed as a "technical error". *See, Bruno*, 308 U.S. at 293-94, 60 S.Ct. at 200.

As this Court is aware, the law does not compel a defendant in a criminal case to take the witness stand and testify, and, if he elects not to do so, no presumption of any kind can be raised against him, and no inference of any kind can be drawn from the fact that he did not testify. This Court, in *United States v. Bain*, 596 F.2d 120 (5th Cir. 1979) clearly established that "Bain [is] entitled to the additional instruction that informs [the jury] to draw no adverse inference from the failure of the defendant to testify." *Id Bain* at 122. Bain does not allow the instruction in the manner it was presented in Petitioner's case. As stated earlier, in *Bruno v. United States*, 308 U.S. 287, 293, 60 S.Ct. 198, 200, 84 L.Ed. 257 (1939), the Supreme Court held that the provisions of Title 28 U.S.C. Section 632 which legislates against any presumption from a defendant's failure to testify requires that the defendant be given properly requested charge similar to the one presented in the original jury instructions reviewed by counsel and the Court during this trial. Given the possibility and the expectation that the jury followed this Court's instruction, this Court must agree that the error in not providing requested charge failed to give the jury an additional guidance to which the defendant is entitled. Support for this view is provided by the Supreme Court in *Taylor v. Kentucky,* 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).

In *Taylor* the Supreme Court stated "while the legal scholar may understand that the presumption of innocence and the prosecution's burden of proof are logically similar, the ordinary citizen may well draw significant additional guidance from an instruction under presumption of innocence." *Id.* at 1934.

In *Bain*, supra this Court reached a conclusion that based on the controlled authority as presented by the Supreme Court in *Taylor* that the jury was entitled to the correct instruction that informs them to draw ***no adverse inference*** from the failure of the defendant to testify. Not the other way around. In this case, since the Court instructed the jury that it could draw no adverse inference from the election of a defendant to testify, allowed the jury the consideration to draw whatever inference it desired based on the defendant's refusal or failure to testify in his defense. *(emphasis added).*

The instructions presented to the jury in the context that it was presented is a reversible error, since it permitted the jury to ascertain inferences against the accused from his failure to explain incriminating circumstances when it was in his power to do so. Also, it operated through his prejudice and virtually made him a witness against himself in violation of his rights secured by the Fifth Amendment to the Federal Constitution. The fact that the jury was advised indirectly as to the possibility of reaching inferences on Petitioner Vasquez's failure to take the stand in his defense is sufficient within its self to violate Petitioner's constitutional rights.

The Supreme Court has on numerous occasions clarified that when the jury is allowed to make inferences on whether the defendant should become a witness against himself is *per se* reversible error. See *United States v. Gainey*, 380 U.S. 63, 85 S. Ct. 754, (1965)(the acute danger in the statute as construed in applied lurks in the provision that the jury may draw the inference in question, unless the defendant explains such presence through satisfaction of the jury); *Carter v.*

27

*Kentucky,* 450 U.S. 288, 301-303, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981)(an instructed jury is likely to draw adverse inference from a defendant's failure to testify, so defendants are entitled to have trial courts instruct juries that no inferences may be drawn). In this case, the opposite effect was applied to Petitioner's situation.

The defendant's right to hold the prosecution to proving its case without his assistance is not to be impaired by the jury's counting the Petitioner's silence at trial against him – and upon request the Court must instruct the jury to that effect. See *Carter v. Kentucky*, 450 U.S. 288, 101 S. Ct. 1112, 67, L. Ed. 2d 241 (1981). It is reasonable enough to expect the jury to comply with that instruction since, as the Supreme Court observed in *Griffin,* the inference of guilt from silence is not always "natural or irresistible". *Id.* at 380 U.S., at 615, 85 S. Ct. 1229.

In sum, this Court must agree that Counsel's error in advising the jury that it cannot reach any inference whatsoever from the election of the Petitioner's decision ***to testify*** had in fact the opposite effect. It allowed the jury to draw substantial inference from the Petitioner Vasquez's decision not to testify in his defense. Neither can this Court determine that the error is considered some sort of "technical" error that this Court should disregard. The error has been considered to be reversible as it benefits the defendant not to have the jury's attention directed to his failure to testify and allow the jury to reach whatever inference it wishes to reach from his constitutional right to remain silent. *See Bruno v. United States*, 308 U.S. 287 (1939).

Accordingly, this Court must agree that the counsel's error in not objecting to an improper jury instructions presented during the Petitioner's trial advised the jury that it could draw no inference from the election of the defendant's right to testify, is per se reversible error. This Court must agree that the only solution in the instant matter is to reverse Petitioner Vasquez's conviction for a new trial since the magnitude of the constitutional violation that has occurred due to the erroneous jury instructions in this case can only be resolved by the vacating of Petitioner's conviction and or granting an evidentiary hearing to address the matter on the record.

## THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE RESENTENCING AND/OR AN EVIDENTIARY HEARING

Petitioner contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his sentence. However, should the court disagree, then the cumulative effect of these errors deprived Petitioner of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999).

The errors here were many, they were all interrelated and their cumulative impact was devastating to Petitioner's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel.

Wherefore, Petitioner respectfully prays this Honorable Court vacate his conviction due to the cumulative effects of counsel's errors. In the alternate, Petitioner requests that an evidentiary hearing be granted to allow Petitioner and opportunity to address the facts of the issues raised and further develop the record.

## AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Mr. Vasquez has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Mr. Vasquez has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and sentence are violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. *United*

*States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief*); Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. Vasquez respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he can prove his case.

## CONCLUSION

**WHEREFORE** MOVANT Mr. Vasquez respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Mr. Vasquez's conviction and sentence be **VACATED**.

Done this _23_ day April 2010

Eric Vasquez
Reg. 39435-179
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

33

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

ERIC VASQUEZ,
               Defendant-Petitioner,

vs.

                       Docket No.:  4:06-CR-89-001

UNITED STATES OF AMERICA
               Plaintiff-Respondent.

_____/

## SWORN AFFIDAVIT OF GERMAN RAFAEL ARIAS
## IN SUPPORT OF PETITIONER VASQUEZ'
## TITLE 28 U.S.C. § 2255

I am providing this affidavit in support of facts that occurred during the trial of Eric Vasquez in support of his Title 28 U.S.C. § 2255 and in support I testify as follows under penalty of perjury, pursuant to Title 28 U.S.C. § 1746:

I am German Rafael Arias a Dominican Citizen, of adult age, single, and my Dominican Republic identity and election card number is 003-0073038-9. I live at Calle No. 6 Barrio 30 de Mayo, Bani, Provincia Peravia, Dominican Republic, provide this affidavit as to the events that occurred in my involvement with the United States government.

On February 21, 2006 I was arrested in Houston Texas, where I believe that the Agents violated my rights when stopped the rented vehicle. I was driving the vehicle and they used the excuse that was missing the sticker in my license plate, however, they never gave me a ticket and took the vehicle.

Without me giving them permission they started looking inside the vehicle and they did not bring an interpreter. I do no speak english. After two or three times looking inside the car, they found 10 kilos of cocaine.  Eventually, I spoke with an attorney named IZGUIRRE who told me that they wanted me to plead guilty and cooperate with the government so I would get less time in jail not be deport to my country.

I signed the agreement to plead me guilty and met the prosecutor, the agents and my lawyer. They asked me to testify against Eric Vazquez and Sugentino Percel in their case if they do not accept guiltiness. I told my lawyer that I could not testify against these people because they were not involved in this crime that I committed.

Then they told me that I had signed the agreement already and if I refused to testify against these people, they could send me 15 to 20 years in jail, perjury charges and deport me to my country.

I want to clarify that both Sugentino Percel and Erick Vazquez are not involved in this crime, when they were arrested in Houston Texas on February 21, 2006, and they did not help me wrap the kilos of cocaine at any time nor helped me place them  in the car. They had no knowledge of what I was doing because I wasmost of the time in the bedroom of the house located in Alejo Street where they found the 25 kilos of cocaine while Vazquez and Percel

were in the living room watching television, playing dominoes and drinking beer.

Because of the pressure I felt on the part of the lawyer, the prosecutor and the agents, I had a nervous breakdown.  The doctor went to visit me and gave me some medications. My lawyer, the prosecutor, and the agents knew about this all the time, but after the meetings with the prosecutor and the agents my nervous breakdown was even stronger so I took more pills that the doctor gave me for the day.  When I went to testify at trial, I kept those pills for me for those moments of depression and was drinking pills during the testimony.

I agreed to sign the agreement with the government, but not all was completely clear for me, if I had known I had to testify against Vazquez and Percel I would never have done this. I told this to my lawyer in advance but he fooled me.

I also want to clarify that I testified at the trial that Vazquez and Percel were making a transaction of 15 kilos of cocaine in November or December 2005 and January 2006 but that never happened. That was not true.  What actually occured was that in one of the meetings with the government they were pushing me too much for me to say when I had made another drug transaction and I told them that in November 2005 Percel, Vazquez and me

made a transaction of 15 kilos of cocaine, but that was not true. Then, before I took the stand to testify, the prosecutor sent a message to my lawyer and asking me to say in the court that the transaction of the 15 kilos was made in December or January 2005 instead than November because he realized that Percel was not in United States in November 2005.

I want to clarify that the person who did me the favor of renting the car in which I was arrested was Luz Alvarado which was my friend. She lived in New York and I invited her to Houston, but she had no knowledge that I was doing illegal business. I lied to her. I am willing to pay for those mistakes that I made and testify in the court of the United States if they require to do me so.

Signed under penalty of Perjury
Pursuant to Title 28 U.S.C. § 1746

GERMAN RAFAEL ARIAS
Declarant

I SANDRA DIAZ PINEDA, authorized notary lawyer of the municipality of Bani, certify and attest that the signature that appears on this document was set before, freely and voluntarily by Mr. GERMAN RAFAEL ARIAS, which declared that this is usually the way how he sign for all acts of daily life, so it deserves full faith and credit.



Signature: Illegible
Sandra Diaz Pineda

The present translation is a true copy and conforms to its original, issued in Santo Domingo, National District, Capital of Dominican Republic, on this fifteen (15th) day of the month of April of the year Two Thousand Ten (2010), at the request of an interested party.

Dra. Arianna S. Martínez R.
-Judicial Translator-

The present translation is based on a document originally written in Spanish. In case of existing any ambiguity or irregularly the Spanish version shall prevail.

República Dominicana
Procuraduría General de la República
Certificamos que la persona que firma este documento aparece en nuestro registro de funcionarios con facultad para tales fines, cuya firma, es semejante a la depositada en nuestro archivo.
Cancelados sellos y recibos correspondientes
Fecha 15/9/20  Firma

PROCURADURIA GENERAL DE LA REPUBLICA
Lic. Yeilkys A. Sena Peña
Analista de Servicios



···



REPUBLICA DOMINICANA
*Secretaría de Estado
de Relaciones Exteriores*

## SEREX

**APOSTILLE**
(Convención de la Haye du 5 octubre 1961)

1. País:
Country

**República Dominicana**

## El presente documento público
This public document

2. Ha sido firmado por:
Has been signed by        YELFRYS SENA PEÑA

3. Actuando en calidad de:
Acting in the capacity of       ANALISTA DE SERVICIOS

4. Llevando el sello/timbre de:
Bears the seal/stamp of       PROCURADURIA GENERAL DE LA
REPUBLICA

## Certificado
Certified

5. En: Santo Domingo
At

6. El: 15/04/2010
Date

7. Por: Elizabeth Williams -Sub Encargado de Legalizaciones
By

8. No: 2010-58757

9. Sello/Timbre
Seal/stamp

10. Firma
Signature

En caso de que este documento vaya a ser usado en un pais no parte
de la Convención de la Haya del 5 de octubre de 1961, deberá ser
legalizado en el consulado o embajada correspondiente.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

ERIC VASQUEZ,
       Defendant-Petitioner,

vs.

                            Docket No.:  4:06-CR-89-001

UNITED STATES OF AMERICA
       Plaintiff-Respondent.

_____/

## SWORN AFFIDAVIT OF BONIFACIO HERNANDEZ IN
## SUPPORT OF ERIC VASQUEZ
## MOTION FOR NEW TRIAL

I am Bonifacio Hernandez, and, pursuant to penalty of perjury under Title 28 U.S.C. §1746, state as follows:

1.    I am an inmate detained in the federal correction institution in Coleman, Florida.

2.    I am making this statement to address the facts concerning my conduct in relation to my co-defendants conduct (Mr. Vasquez) that was charged in my original indictment.

3.    Upon my arrest, I advised my attorney, David Adler, that individuals arrested in my case had no relationship to the charges and were no way involved with me in any crime.  I also advised my attorney

that those individuals (Mr. Vasquez) had no knowledge of my criminal activities.

4.    I specifically advised Mr. Adler, my attorney, that neither co-defendants, Sugentino Percel nor Eric Vasquez, were involved in the crimes in which I was charged, nor did they have any knowledge of any drugs that were in my sole possession.

5.    On more than one occasion I made a specific request that my attorney, Mr. Adler, fully inform the prosecutor that I was ready to testify for the defense of both co-defendants.  Specifically that I was aware that they had no knowledge nor were they participating in my criminal acts.

6.    Although my attorney never presented my information to the prosecutor on behalf of Mr. Percel and Mr. Vasquez, I understood that my attorney, Mr. Adler, did discuss my willingness to testify for the defense of Mr. Percel and Mr. Vasquez in the trial.

7.    Once again, I asked my attorney, Mr. Adler, to notify the attorneys for Mr. Percel and Mr. Vasquez that I was available and ready to testify on the behalf of their clients.

8.    Although I requested, on numerous occasions, that I be allow to testify for both Mr. Percel and Mr. Vasquez, unfortunately they are being punished and sentenced for crimes that they did not commit. Neither did they have any personal knowledge of the crimes that they were charged with.

9.    It is through my sworn affidavit that I present to the Court, that if offered to testify at any hearing or at any subsequent trial, that I will provide direct testimony of my involvement, material to the charged offense, and I will provide exculpatory information relating to both Mr. Percel and Mr. Vasquez as to their non-involvement in the charged offense.  Both Mr. Percel and Mr. Vasquez are innocent of the charged crimes.

10.   I present the aforementioned statements to the best of my knowledge pursuant to penalty of perjury under Title 28 U.S.C. §1746.

Respectfully submitted,


Bonifacio Hernandez

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

ERIC VASQUEZ,
      Petitioner,


vs.                                          Docket No.: 4:06-CR-89-001


UNITED STATES OF AMERICA
      Respondent.
_____/

### SWORN AFFIDAVIT
### ERIC VASQUEZ

COMES NOW, Petitioner, Eric Vasquez pursuant to Penalty of Perjury under Title 28 U.S.C. § 1746, with this her Sworn Affidavit in Support of Motion to Vacate Sentence pursuant to Title 28 U.S.C. § 2255 and provides as follows:

1. I am the Petitioner in the above captioned cause.

2. At no time during my pre-trial preparation, did my attorney ever explain to me the repercussions of the guidelines, the application of the guidelines relevant conduct, nor the application of the guidelines acceptance of responsibility sections. In fact, I had very little conversations with my attorney at all regarding my pre-trail preparations. Had he taken a minimal amount of time to explain to me the repercussions of the guidelines, I would have never proceeded to trial.

3. There was never any discussion that uncharged drug quantities would ever be applied to my sentence at any stage. There was never any explanation of the acceptance of responsibility portions of the guidelines.

4. Had counsel taken the opportunity to explain to me the guidelines in even the most basic term, I would have never proceeded to trial. At all stages I was under my attorney's directions and advice. Had counsel explained to me the acceptance of responsibility calculations of the guidelines, I would have never proceeded to trial and would have avoided a lengthy term of incarceration.

5. I had never heard the application of the guidelines prior to my sentencing date.

6. I was never explained the concept of "safety valve" and how it would have reduced my sentence considerably. There was just no explanation of the guidelines even in the most basic fashion.

7. During my pre-trial preparation, I advised my attorney to interview two of the Government witnesses to verify that their stories were being coerced. I basically begged my attorney to interview Bonifacio and Arias since I was assured that they did not want to testify as they did and that they wanted to present the truth to counsel.

8. I was assured by counsel that the Government's discovery was sufficient and that it was not required to interview Bonifacion and Arias. Counsel was instructed to interview them on several occasions, however, he refused to do as requested.

9. Both witnesses had information that was useful to my defense in my case, but the information was not presented due to counsel's failure to prepare and call the witnesses.

10. At all stages I relied on counsel's advise and was under the impression that counsel was preparing for my defense.

11. Counsel even failed to meet with me at the jail prior to my trial to advise me on the status of the guidelines, nor advise me on the status of the interviews of the witnesses I requested on several occasions.

12. It was not until my trial, that I realized that counsel had not done as I requested and interviewed the witnesses.

13. I relied on my attorney to represent me accurately at all stages

Done this __20__, day of April 2010

Eric Vasquez
Reg. 39435-179
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640